UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-CR-142 (DSD/KMM)

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                 **RESPONSE IN OPPOSITION TO MOTION FOR FURLOUGH**

CHRISTOPHER JAMES RAJKARAN,

      Defendant.

      The United States of America, by and through its attorneys, Charles J. Kovats, Jr. Acting United States Attorney, and Miranda E. Dugi and Joseph H. Thompson, Assistant United States Attorneys, hereby submits its response in opposition to defendant Christopher James Rajkaran's motion for a furlough to attend his grandmother's funeral in New York tomorrow, December 2, 2021.

      Rajkaran has sought and was denied release after two hearings in the Eastern District of New York and two hearings[1] in the District of Minnesota due to the serious risk of flight he poses. The Court should deny his motion for a furlough, but order that Rajkaran be permitted access to remote means of attendance (e.g. via Zoom) to the extent practicable.

---

[1] One dedicated to the issue of release, and for a second time after his entry of a guilty plea.

I. **Factual and Procedural Background**

a. *Instant Offense Conduct*

Rajkaran has pleaded guilty to conspiracy to commit securities fraud (18 U.S.C. § 371, 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5) and is pending sentencing before this Court. (Docs. 80, 81). As Rajkaran admitted in his guilty plea, central to his offense conduct were materially false and fraudulent statements regarding his and his coconspirators' activities in hijacking public companies, as well as the status of the companies in an effort to "pump and dump" their stock.

b. *Rajkaran Ties to Guyana*

As the government previously proffered in both districts considering Rajkaran's bids for release, Rajkaran was born in Guyana, and maintains close ties to the country—with his wife, young child, residence, and business ties in Guyana. Email and financial records reflect that while Rajkaran was living in New York, he traveled regularly to Guyana and sent money transfers to Guyana regularly throughout 2020 to at least five recipients, including his now-wife. He sought emergency travel authorization to Guyana during COVID-19 for the birth of his child in August 2020, and after participating in a Securities and Exchange Commission deposition in September 2020, decamped to Guyana, returning to the United States only briefly and infrequently (approximately twice) to visit his children

in the United States. It was on one of these visits that the United States was able to execute its warrant to arrest Rajkaran on June 18, 2021.

According to a recorded statement Rajkaran made in Winter 2021 from Guyana,[2] he had no intention of returning to New York permanently:

> Once I get there [to New York], I got to take care of some stuff. I got to transfer some money around and see what I got to do with some business stuff and come right back [to Guyana].
> . . .
> I'm telling you, listen. I love where I'm at. Life has been great. I don't have nothing to worry about here [Guyana]. I have a beautiful kid. I have a beautiful wife. I'm living good.

During a post-*Miranda* interview with special agents from the Federal Bureau of Investigation, Rajkaran stated he had no money, acknowledged that he had a fish exportation business in Guyana, but claimed that it was not profitable. He acknowledged staying with his mother and grandmother in New York, and relied on unemployment assistance. Rajkaran now seeks furlough to attend his grandmother's funeral in New York.

Rajkaran has no apparent personal ties to Minnesota beyond his involvement in the scheme, including his relationship to Minnesota-based coconspirators Mark Miller and Saied Jaberian.

    c. *Rajkaran's Financial and Criminal History*

According to the Pretrial Services report, Rajkaran's only reported asset was a checking account containing $800, and claimed monthly financial obligations in the amount of at least $2470. Rajkaran does not account for the source of funds used to satisfy

---

[2]    The United States proffered the substance of this statement to the Court at Rajkaran's first detention hearing.

these obligations, instead providing unverified reports of self-employment as a "marketer" for the past eight years and claiming variable income ranging from $1500 to $2500 per month, as detailed in the Pretrial Services report. Rajkaran's mother reported believing that he was employed part-time with State Farm Insurance Company, which Rajkaran himself did not report. (Discovery materials from the investigation revealed that Rajkaran previously worked at State Farm, but did not at the time of his arrest.)

The Pretrial Services report notes that Rajkaran's criminal record revealed multiple alias dates of birth, an additional social security number, and alternate names. All but his most recent offense required issuance of bench warrants. His most recent offense (a Class A misdemeanor) included convictions on four counts of "Act in Manner Injure Child Less than 17" and resulted in a probationary sentence that was not discharged until March 2018—meaning that Rajkaran was actively engaged in the instant offense while he was on probation.

    d. *Post-Arrest Conduct*

Rajkaran's Pretrial Services report in New York reflects that after his arrest in this case, Rajkaran provided the Court with false information about his intent to travel to Guyana. Rajkaran reportedly told Pretrial Services in New York that he "was planning a visit to Guyana in August 2021," when in fact, according to flight records, Rajkaran was scheduled to return to Georgetown, Guyana on JetBlue from John F. Kennedy Airport in Queens, New York on June 23, 2021—five days after his arrest in this case. Rajkaran's

4

mother, P.S., also told Pretrial Services that she believed Rajkaran would be traveling to Guyana prior to June 29, 2021.

Shortly after his arrest in this case, monitored calls reflect that Rajkaran began contacting his coconspirators, instructing them not to cooperate with law enforcement and/or attempting to coordinate efforts to inculpate particular coconspirator(s).

   e. *Order for Detention*

After a contested hearing in the Eastern District of New York on June 18, 2021,[3] the Honorable James R. Cho found that Rajkaran posed too great a risk of flight to be released on any conditions proposed and ordered Rajkaran detained and removed to the District of Minnesota. Before the magistrate judge was the recommendation of detention by U.S. Probation and Pretrial Services and associated report, which reflected Rajkaran's history of bench warrant. For his part, Rajkaran requested that he be released to his mother's residence. Proffered information from the government reflected Rajkaran's long history of and current ties to Guyana, absence of ties to Minnesota, and strong incentive and ability to flee given the instant charges. The Court detained Rajkaran based on his risk of nonappearance. According to local EDNY practice, the magistrate judge nonetheless gave Rajkaran leave to submit a revised proposed bail package in support of his bid for release.

Rajkaran then sought to reopen the detention proceedings before a new magistrate judge in the Eastern District of New York. Despite Rajkaran's efforts to proffer additional

---

[3]   Rajkaran has not provided copies of transcripts of the hearings. However, the undersigned attended both of Rajkaran's detention hearings via Zoom and provides the summary herein based on contemporaneous notes.

information regarding sureties to permit his release to family or associates in New York, the magistrate judge found that he presented too great a risk of flight given his ties to Guyana and the charged conduct. Accordingly, Rajkaran remained bound over for removal to the District of Minnesota.

### f. Proceedings in Minnesota

#### i. Motion to Reopen Detention

Rajkaran made his initial appearance in the District of Minnesota on July 8, 2021, where he sought to raise the issue of detention again. He did so yet again at his arraignment before the Court on July 12, 2021, where the Court noted Rajkaran's prior two detention hearings in New York and that Rajkaran's next recourse was a motion to revoke or appeal his detention order. Thereafter, his counsel filed a motion and was granted to hearing to argue in favor of reopening the issue of release under 18 U.S.C. § 3142(f)(2). The Honorable Elizabeth Cowan Wright denied Rajkaran's motion, noting that Rajkaran had failed to meet his burden to show previously unknown information that would meet the threshold necessary for his release. Magistrate Judge Cowan Wright went further to make alternative findings that even under a more permissive standard, she would make independent findings by a preponderance of the evidence that Rajkaran posed a serious risk of nonappearance and should remain detained. (Doc. 77: Order). The magistrate judge

explicitly addressed Rajkaran's claims regarding his grandmother's illness, and found them insufficient to justify his release. *Id.* at 5.

### ii. Post-plea Request for Release

Rajkaran pleaded guilty before this Court on October 7, 2021. (Docs. 80, 81). At the end of the hearing, his counsel again requested that Rajkaran be released pending sentencing, but made no showing in support of his motion. The government responded by noting that after entering a plea, Rajkaran's burden was even greater, that he had completely failed to bear it, and that release remained appropriate. The Court denied Rajkaran's motion. (Doc. 80).

### iii. Request for Furlough

Rajkaran filed a motion on November 30, 2021 seeking a furlough to New York to attend his grandmother's funeral two days later, on December 2, 2021. (Doc. 86). Rajkaran proposes that he should be transported by the U.S. Bureau of Prisons and that the cost should be assessed to the United States, as Rajkaran is indigent. *Id.* at 2. He provides no proposed information regarding logistics of his travel or furlough beyond the location and time of the funeral.

**II.   Analysis**

Although the death of Rajkaran's grandmother is certainly tragic, there is no basis for him to be furloughed given his history and the ongoing serious risk of nonappearance he poses.

Because Rajkaran is pending sentencing, the Court must find by clear and convincing evidence that he does not pose a risk of flight, or danger to the community to

grant the requested furlough. 18 U.S.C. § 3143(a). The record before the Court regarding Rajkaran's risk of flight weighs heavily in favor of his continued detention. Given Rajkaran's absence of ties to Minnesota, his strong ties to a country where timely extradition would likely prove impracticable (and likely impossible), his criminal history, his precarious financial and employment situation, the seriousness of the charges against him, the strength of the evidence, and his willingness to lie to Pretrial Services, Rajkaran remains a considerable risk of flight. On their own, Rajkaran's strong ties to Guyana would be cause for considerable concern about his risk of nonappearance in this case. His apparent lack of candor to the Court about those ties—and other matters discussed below—compounds these concerns. Indeed, Rajkaran lied to Pretrial Services about his intended—imminent—travel plans for the days after his arrest, as well as his current living situation.

Rajkaran's criminal history also weighs heavily against release, even temporarily. Rajkaran's criminal history spans nearly two decades, and includes multiple instances requiring the issuance of bench warrants. Perhaps even more concerning is that Rajkaran was already under court supervision at the same time he engaged in the instant offense. All these circumstances—particularly when coupled with an evident lack of candor to the Court—established that even temporary furlough would create an untenable risk.

Moreover, Rajkaran's proposed furlough should also be denied because it poses a threat to the public, to him, and others at the Sherburne County Jail. Rajkaran's proposal is to travel to another state to attend a gathering of an unknown number of people and then return to Sherburne County Jail. There is a serious risk that Rajkaran could be infected with COVID-19—even if fully vaccinated—en route, and infect those he might encounter in

transit, including the public and law enforcement personnel responsible for his transfer, or bring the disease back with him to Sherburne, putting the staff and inmates at risk. Additionally, COVID-19 protocols have required testing and isolation to protect the public from inmates upon release (including compassionate release) that is impossible on such a short timeline. Such measures are particularly important when, as now, Minnesota has some of the worst COVID-19 case indicators in United States. See, e.g. "COVID-19 hospitalizations surge above 1,500 in Minnesota" StarTribune November 30, 2021 (available at https://www.startribune.com/covid-19-hospitalizations-surge-above-1500-in-minnesota/600122258/) ("Minnesota had the highest rate of infections and the eighth-highest rate of COVID-19 deaths over the past seven days among states, according to the CDC's COVID-19 data tracker."). Given the pandemic and especially considering the current spike in cases in Minnesota, Rajkaran's proposal is inherently risky to the public, Rajkaran, and the inmates and staff of Sherburne County Jail.

Courts have denied defendants' requests for furloughs under similar circumstances, including for close family members' funerals. *See, e.g.*, *United States v. Carter*, No. 020CR00035MJDKMM, 2020 WL 2112280, at *2 (D. Minn. May 4, 2020) (denying drug defendant's furlough to attend mother's funeral in Illinois due to risk of nonappearance and COVID-19 risks to others).

Finally, it bears mention that Rajkaran is currently in the custody of the U.S. Marshals Service, not the Bureau of Prisons as his motion suggests. Even if it were possible, arranging for travel for an inmate on such short notice to another state would incur considerable costs to and tax the personnel resources of the Marshal's Service, which

is already tasked with a variety of sensitive and costly tasks to ensure the security of inmates and the Court. There is nothing about Rajkaran's case that differentiates it from any other defendant who might seek to travel for a loved one's funeral at the government's expense, and would set a problematic and financially infeasible precedent.

### III.   Conclusion

For all the foregoing reasons, the United States respectfully requests that the Court deny Rajkaran's motion. Nonetheless, the United States requests that the Court's order include instructions to the necessary personnel in the U.S. Marshal's Service and Sherburne County Jail to facilitate Rajkaran's remote attendance at the funeral via Zoom or other remote means of paying his respects to his grandmother.

Dated: December 1, 2021                                           Respectfully Submitted,

                                                                                      CHARLES J. KOVATS, JR.
                                                                                      Acting United States Attorney

                                                                                      */s/ Miranda E. Dugi*
                                                                                      BY: MIRANDA E. DUGI
                                                                                      (NY: 5140546)
                                                                                      JOSEPH H. THOMPSON
                                                                                      Assistant U.S. Attorneys