UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

———————————————

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 21-CR-142 (DSD/KMM) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANT'S SENTENCING** |
| | ) | **POSITION** |
| CHRISTOPHER JAMES RAJKARAN, | ) | |
| | ) | |
| Defendant. | ) | |

———————————————

## INTRODUCTION

Christopher Rajkaran experienced financial instability at a young age. As an infant, born in Georgetown, Guyana, he was left in the care of his maternal grandmother after his mother traveled to the United States to find work. Although he experienced a caring and stable household, he had to take on adult responsibilities that no child should have to face. When the money his mother was sending to Guyana was not enough, seven-year old Mr. Rajkaran had to obtain a job to support his family, while simultaneously attending school. Although common in Guyana, most children do not, and should not, experience such responsibilities at that age.

Mr. Rajkaran continued to support his family throughout his life. When he was 11-years old, he came to the United States. In high school, he worked at a pizzeria to help support him and his mother. Not only has he always tried to ensure his two children, who reside in New York, were supported, but that his wife and child in Guyana were taken care of. At the time of his arrest, he was in the process of applying for their immigration to the United States to join him. During this time, he also supported his mother and grandmother, who sadly passed away this fall.

On October 7, 2021, Mr. Rajkaran pled guilty to conspiracy to commit securities fraud.

His need to support his family influenced his conduct in the instant offense. However, he realizes his attempt to support his family in a fraudulent manner has only hurt those he loves. Not only is he unable to help provide for his family since his pretrial incarceration, but he has been separated from his children, his wife, and his mother. Tragically, he was unable to virtually attend the funeral for his grandmother, who raised him since he was 11 years old, due to the choices he made. He is remorseful for his conduct and realizes that his actions were wrong.

Mr. Rajkaran has a low risk of recidivism. His criminal history contains only misdemeanor offenses that occurred over 10 years ago, with the exception of one misdemeanor offense occurring over five years ago. He is remorseful for his actions and accepted responsibility for pleading guilty to the offense only three months after he was indicted. Mr. Rajkaran falls under a sentencing guideline range of 24 to 30 months imprisonment. However, this range is a result of his overstated criminal history and greater than that contemplated by the plea agreement. A sentence of probation satisfies the goals set forth in 18 U.S.C. § 3553(a) and does not create an unwarranted disparity. A sentence to a term of imprisonment will be greater than necessary given Mr. Rajkaran's prior criminal history, his remorse, and his acceptance of responsibility.

## BACKGROUND

Mr. Rajkaran was born in Georgetown, Guyana. As an infant, he was raised by his mother, Pauline Sammi, who provided for him through multiple means, including being a nanny, selling cosmetics, and working in retail. However, these jobs did not provide enough income. Mr. Rajkaran's father was never involved in his life and went on to have two other children from another relationship. To make ends meet, Ms. Sammi left Guyana and traveled to the United States to work, leaving her infant behind.

During his mother's absence, Mr. Rajkaran was raised by his maternal grandmother, Edris Lalldehrai. Living in a small village outside of Georgetown, his grandmother provided him a stable and loving environment. Although Mr. Rajkaran attended school as a child, he began working at the age of 7 at the local rice-patty factory to earn money for his family. When Mr. Rajkaran was 11 years old, his mother returned to Guyana to bring him to the United States with her. This was the first time he saw his mother since she left for the United States.

Upon arrival in the United States, Mr. Rajkaran and his mother began residing in New York. Again, money was tight, so the two had to reside in small spaces, including basements. During this time, Mr. Rajkaran attended school and worked in a pizzeria. While in school, he was active in sports, including football and track. Mr. Rajkaran was attending school and working, but made a bad decision in the eleventh grade and was arrested for a juvenile offense. He was in custody for one year and did not graduate highschool. However, Mr. Rajkaran was motivated to complete his high school education. He successfully obtained his GED in 2004 and took some college courses. While in the process of obtaining his GED, and later taking his college courses, Mr. Rajkaran was consistently employed. This was not to only support himself, but his family.

Mr. Rajkaran has three children, Kaylee, Emilee, and Rylee. Kaylee and Emilee both live in New York with their mothers, Indranie Hosein and Tashani Narain. Before his arrest, Mr. Rajkaran would visit Kaylee on the weekends and had split custody with Emilee. His youngest child, Rylee, lives in Guyana with her mother and Mr. Rajkaran's wife, Shanada Rajkaran. On a trip to Guyana, Mr. Rajkaran met Shanada and the two married in 2019. Before his arrest, Mr. Rajkaran was in the process of applying for their immigration to the United States. Both are still

in Guyana.

On June 16, 2021, Mr. Rajkaran was charged with conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, 15 U.S.C. § 78j(b) and 78ff, and 17 U.S.C. § 240.10b-5; securities fraud, including aiding and abetting the same, in violation of 15 U.S.C. § 78j(b) and 78ff, 17 U.S.C. § 240.10b-5, and 18 U.S.C. § 2; and wire fraud, in violation of 18 U.S.C. § 1343. On October 7, 2021, Mr. Rajkaran pled guilty to Count I of the indictment: conspiracy to commit securities fraud. While his He has remained in federal custody since his initial arrest.

## ARGUMENT

The Government and Mr. Rajkaran do not have any disputes regarding his base or total offense level. However, instead of a Criminal History Category of I, as was contemplated by the parties, Mr. Rajkaran has a Criminal History Category of III. During the plea agreement, it was anticipated that the sentencing guideline range would be 18 and 24. However, the increase to a Criminal History Category of III has resulted in a guideline a range of 24 to 30 months. Mr. Rajkaran asserts that his criminal history is overstated and a term of probation satisfies the intent of the sentencing guidelines and is fully supported by the sentencing factors set forth in 18 U.S.C. § 3553(a).

## I.   OVERSTATED CRIMINAL HISTORY

Mr. Rajkaran respectfully suggests his criminal history score is an overstatement of his actual criminal history. Mr. Rajkaran received one point for a misdemeanor Impersonation-Other Person that occurred in 2006, when he was 20 years old. Additionally, he received one point for a misdemeanor DWI in 2007, when he was 22 years old. Lastly, three points were added to his score, as he was on probation for a misdemeanor, Endangering Welfare of a Child, during the

4

instant offense. These three misdemeanor offenses, two that occurred in 2006 and 2007, result in a criminal history score of 5 and a Criminal History Category of III.

The guidelines account for a defendant's overstated criminal history. The Court is permitted to grant a downward departure where "reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." USSG § 4A1.3; see also *United States v. Jimenez-Gutierrez*, 491 F.3d 923, 928 (8th Cir. 2007) ("[E]ven though criminal history is taken into account in determining the proper advisory Guideline range, overstated criminal history has always been a permissible basis for a departure or a variance.").

Application Note 3 states "a downward departure from the defendant's criminal history category may be warranted if, for example, the defendant had two minor misdemeanor convictions close to ten years prior to the intervening period." *Id*. Here, Mr. Rajkaran had two misdemeanors that occurred over 10 years ago. He was convicted of his most recent misdemeanor in 2016, which occurred 5 years ago. He has not committed any further crimes within the last five years. His misdemeanors reflect that he does not pose a threat that the public needs to be protected from. Mr. Rajkaran respectfully requests a downward departure to Criminal History Category I from III.

The offense of endangering the welfare of a child occurred when Mr. Rajkaran was dating his child's mother.  She became pregnant when she was 16 or 17 years old.  She had the baby. She and Mr. Rajkaran have been raising the child, co-parenting, ever since. While they are no longer together they still enjoy a supportive and cooperative relationship.  She is in her late 20's

and has even attended one of the zoom court sessions to show support for Mr. Rajkaran's release.

## II.   A PROBATIONARY SENTENCE FULLY ACCOMPLISHES THE SENTENCING GOALS SET FORTH IN 18 U.S.C. 3553(A).

### a.   The Nature and Circumstances of the Offense.

The nature and circumstances of the offense are set out in Paragraphs 9-30 of the Presentence Report and Paragraph 2 of the Plea Agreement. Between 2017 and 2019, and at the direction of Mr. Miller, Mr. Rajkaran hijacked two dormant shell companies, Encompass Holdings, Inc. and Bell Buckle Holdings, Inc., with co-defendants Mark Miller and Saied Jaberian.

To commit this offense, the three individuals identified dormant public shell companies on the OTC market. These companies stocks traded at a fraction of a penny per share. Mr. Miller, Mr. Rajkaran, and Mr. Jaberian purchased hundreds of thousands, sometimes millions of these companies shares. Then, the defendants created false company documents, stating that a company officer resigned and one of them was appointed to fill their place. These documents would be filed via EDGAR, allowing Mr. Miller and Mr. Rajkaran to hijack the company. Once these individuals took control of the company, they created false press releases sharing developments in the corporations that were not true. After the stock prices increased, Mr. Miller, Mr. Rajkaran, and Mr. Jaberian sold their stocks for a profit.

Mr. Rajkaran participated in two companies' hijackings out of the four companies affected. In November 2017, Mr. Rajkaran purchased 29 million shares of Encompass stock at $0.0004 each for $17,865. Mr. Miller purchased 12 million shares at $0.0002 for $3,100. Subsequently, Mr. Rajkaran created numerous posts about Encompass' stock on investorhub.com

6

intending to increase the stock price. On November 3, 2017, Mr. Miller issued a press release announcing his appointment as President and CEO of Encompass. He falsely claimed the company would be focusing on Residential and Commercial Real Estate Holdings. Additionally, Mr. Miller released another press release falsely stating he was acquiring $6,400,000 of another company's assets, as well as its gross revenue. On November 13, 2017, Mr. Miller and Mr. Rajkaran sold their shares and profited.

In February 2018, Mr. Miller, Mr. Rajkaran, and Mr. Jaberian assumed control of Bell Buckle Holdings, Inc. Similar to Encompass, Mr. Miller drafted fake board minutes claiming the President and CEO's resignation and announced Mr. Jaberian would accept these roles. Subsequently, Mr. Miller purchased 8 million shares for $2,399, Mr. Rajkaran purchased 30 million shares for $29,310, and Mr. Jaberian purchased 20.5 million shares for $43,262. Again, documents announcing Mr. Jaberian's new roles were filed with EDGAR. Similarly, Bell Buckle's stock was promoted on investorhub.com by another individual. Between February 2018 and March 2018, Mr. Miller, Mr. Rajkaran, and Mr. Jaberian sold their stocks and profited.

Mr. Rajkaran's conduct created a loss between $150,000 and $250,000. Mr. Rajkaran acknowledges his role in the offense and accepted responsibility three months after he was indicted. As someone who was trying to support his family, he succumbed to the pressure of trying to make ends meet. Mr. Rajkaran realizes his actions were wrong and is remorseful for his conduct. However, as a result of Mr. Miller's influence and direction, Mr. Rajkaran actually lost more than $50,000.00.

**b.**     **Mr. Rajkaran's History and Characteristics**

Although Mr. Rajkaran had a stable and loving home, money has always been a concern.

When he was an infant, his mother left him for 11 years to find work in the United States and to send money back to Guyana. When that was not sufficient, seven-year old Mr. Rajkaran began working in a local rice-patty factory to help support his family. While most children go home after school, Mr. Rajkaran went to work.

When Mr. Rajkaran's mother traveled back to Guyana to take him to the United States, their financial situation still did not improve. Mr. Rajkaran was living in small apartments, including basements. Again, he had to work to help support his family when he was in school. As a teenager and young adult, Mr. Rajkaran made poor choices. He was convicted of a juvenile offense and expelled from his high school. Although he did not graduate, he worked hard and successfully obtained his GED. Mr. Rajkaran continued to struggle with making the right decisions and was convicted of four misdemeanors by the time he was 22 years old. However, he has only been convicted of misdemeanors and his last conviction occurred in 2015, when he was 29. It has been over five years since his last conviction.

When asked to describe Mr. Rajkaran, his mother noted he is soft-hearted and trusts others easily. Mr. Rajkaran is continuing to push through this difficult time and is excited for what the future holds for him and his family. Mr. Rajkaran has always helped support his family. His motivation and need to support those he loved led him to making poor decisions and committing the instant offense. However, he acknowledges his actions were wrong and accepted responsibility for his role shortly after his indictment. He has shown remorse and is focused on serving his term of imprisonment, returning to his family in New York, and assisting his wife and child with immigrating to the United States.

8

c.    **Societal and Personal Sentencing Needs**

In fashioning an appropriate sentence, the Court is directed to consider society's needs for a sanction that is a just punishment, promotes respect for the law, deters criminal conduct, and reflects the seriousness of the offense, while ensuring the sanction is appropriate for the individual offender before the Court.

As for the seriousness of the offense, Mr. Rajkaran pled guilty to one count charging him with conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, 15 U.S.C. § 78j(b) and 78ff, and 17 U.S.C. § 240.10b-5. The agreed to incarcerative sentence was between 18 months and 24 months. However, the PSI states that due to Mr. Rajkaran's criminal history category of III, the guideline imprisonment range is 24 months to 30 months.

Although Mr. Rajkaran has a criminal history category of III, this is overstated. The points accumulated result from three misdemeanors that occurred over 5 years ago; two points incurred due to this instant offense occurring when he was on probation. However, other than this one violation, he successfully completed probation on his other past offense. After he was convicted of his second DWI, he was court-ordered to participate in a six-week alcohol education class at a clinic and successfully completed this requirement.

Notably, Mr. Rajkaran committed the instant offense between 2017 and 2019, but was not charged and incarcerated during this matter until June 16, 2021. He did not commit any offenses between these dates. His one violation during probation is not indicative that he will commit another offense. Mr. Rajkaran understands that his conduct was wrong and is remorseful. He understands that if he wants to be a present father and support his family, he needs to be law-abiding and a productive member of society.

Reviewing his actual criminal history, Mr. Rajkaran demonstrates the unlikelihood of recidivism. As an offender in a lower criminal history category, Mr. Rajkaran is among the least likely offenders to commit future crimes. *See* U.S. Sentencing Commission, Recidivism Among Federal Offenders, A Comprehensive Overview, at 18 & Fig. 6 (March, 2016); *see also* U.S. Sentencing Commission, Criminal History and Recidivism of Federal Offenders, at 7 & Fig. 1 (March 9, 2017).

His Criminal History Category of III, from three misdemeanors committed over five years ago, is not indicative of his future due to his criminal history score over-representing the seriousness of his criminal past and risk to commit future violations. Mr. Rajkaran is motivated to serve his sentence and reunite with his family.

> ### d.   A probationary sentence will not create an unwarranted sentencing disparity.

When Mr. Rajkaran pled guilty, it was assumed he would have a Criminal History Category of I, due to the minor offenses that he was convicted of years ago. Due to the Criminal History Category of I, Mr. Rajkaran was facing 18 months to 24 months imprisonment. However, he received a total of five points for his criminal history score, resulting in a Criminal History Category of III. Mr. Rajkaran is now facing 24 months to 30 months imprisonment. Even though Mr. Rajkaran is seeking a variance, it does not represent disparate treatment to similar offenders. Mr. Rajkaran takes responsibility for his conduct and knows his actions were wrong. Once he is released, he wants travel back to New York and be present in his children's lives, assist his wife and child immigrating to the United States, and help support his family by being a productive member of society.

If there has been any disparate treatment it has been to Mr. Rajkaran's disadvantage. Mr. Rajkaran has remained in custody since his arrest while his co-defendants have remained free. He has used his time in jail however to gain the trust of the jail staff and worked his way to a position of trustee. He has suffered from Covid recently and is continuing to have respiratory issues having an attack recently that required an inhaler. Because of Covid much of Mr. Rajkaran's time has been on lockdown 23 and 1.

## CONCLUSION

Therefore, for the reasons stated above, Mr. Rajkaran respectfully suggests that a sentence of probation with no further executed prison time would meet the statutory goals in this case. Mr. Rajkaran respectfully asks the Court to impose a term of probation.

Respectfully submitted,

RIVERS LAW FIRM, P.A.

Dated: 1 - 6 - 2022

By: _____
Bruce Rivers (#282698)
Attorney for Defendant
701 Fourth Avenue South, Suite 300
Minneapolis, MN 55415
Telephone: (612) 339-3939
Facsimile:  (612) 332-4003