UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-142(2) (DSD)

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>CHRISTOPHER JAMES RAJKARAN, )<br><br>Defendant. ) | **GOVERNMENT'S POSITION REGARDING SENTENCING** |

The United States of America, by and through its attorneys, Charles J. Kovats, Jr., Acting United States Attorney for the District of Minnesota, and Joseph H. Thompson and Miranda E. Dugi, Assistant United States Attorneys, submits the following sentencing memorandum and respectfully requests that the Court impose a sentence of 18 months in prison.

## I. BACKGROUND

Christopher Rajkaran participated in a pump-and-dump stock manipulation scheme. He and his co-conspirators carried out a scheme to surreptitiously hijack and assume control over dormant public shell companies. After taking control of the companies, they issued fraudulent press releases and public filings designed to pump up the stock price. The defendants then dumped their stock at the fraudulently inflated prices.

### A. Pump-and-Dumps and Dormant Shell Companies

Generally, a pump-and-dump is a scheme to inflate a stock's price based on false, misleading, or fraudulent information. Participants in the scheme acquire

shares of the stock at low prices, artificially inflate the price of the stock, then sell their shares at the inflated price.

The particular pump-and-dump scheme involved the hijacking of dormant public shell companies. Dormant public shells are publicly traded companies without active operations. Most of them have been abandoned by their management, stopped filing their required Securities and Exchange Commission (SEC) and secretary of state filings, and often have revoked registration.

Dormant public shells remain publicly traded on the over-the-counter (OTC) markets. These stocks generally trade for fractions of a penny per share—often $0.0001 per share. They are thinly traded, with very few shares trading on any given day. As a result, dormant public shells are ripe for manipulation through pump-and-dump schemes. In the words of the SEC, "empty shell companies are to stock manipulators and pump-and-dump schemers what guns are to bank robbers—the tools by which they ply their illegal trade."

### B.   The Shell Hijacking Scheme

Christopher Rajkaran was an active trader and promoter of OTC stocks living in Queens, New York. Rajkaran had a large following on Twitter and iHub.com, a popular website devoted to penny stocks and the OTC market. He used those platforms to promote penny stocks.

In 2017 and 2018, Rajkaran participated in a scheme to identify and hijack dormant public shell companies for use in pump-and-dump schemes. He conspired with another OTC Trader in Minnesota, Mark Miller, and others to carry out the

scheme. They used a four-step process to hijack and manipulate a shell company's stock.

First, Rajkaran and his co-conspirators bought stock in the shell company (or "frontloaded") at low prices in the public markets. They were able to obtain hundreds of thousands or even millions of shares given the penny stocks' extremely low prices.

Second, Rajkaran and his co-conspirators took control over the shell companies through fraudulent public filings. They did this by creating fake resignation letters and board minutes announcing the resignation of the prior corporate officers and the appointment of the conspirators as the new officers and directors of the company. They used these fake documents to reinstate the companies' corporation registration. These new secretary of state documents listed the conspirators as the corporate officers and directors. They used these new, fraudulently obtained corporate registration documents to change the password for the companies' account on the SEC's EDGAR website, which allowed them to make public filings on behalf of the company.

Third, Rajkaran and his co-conspirators issued fraudulent press releases and SEC filings to pump up the stock price. The press releases or reports announced market-moving information, such as a potential merger or new business opportunity. At the same time, they promoted and pumped up the stock price via Twitter and posts on investorhub.com, a website with a popular message board devoted to penny stocks.

Finally, Rajkaran and his co-conspirators sold (or "dumped") their shares at the fraudulently inflated stock price. This mass selling generally trashed the stock price, leaving unsuspecting investors holding nearly worthless shell company stock.

### C.    Rajkaran's Role in the Scheme

Rajkaran and his co-conspirators hijacked multiple public shell companies, including Bell Buckle Holdings Inc. (OTC: BLLB), Encompass Holdings Inc. (OTC: ECMH), and Utilicraft Inc. (OTC: UITA). Rajkaran participated in the scheme in several ways. First, he helped Mark Miller identify dormant public shell companies that could be hijacked. Second, he worked to pump up the price of the hijacked companies' stock through the issuance of false and fraudulently statements on Twitter and online. Finally, Rajkaran benefited from the scheme by purchasing shares in the shell companies at low prices and then later selling them at the fraudulently inflated prices. In all, Rajkaran made more than $50,000 from the scheme.

On October 7, 2021, Rajkaran pled guilty to one count of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371 and 15 U.S.C. § 78j(b). Dkt. ##80-81.

## II.   GOVERNMENT'S SENTENCING RECOMMENDATION

Based on a review of the § 3553(a) factors, the government recommends that the Court impose a sentence of 18 months in prison.[1]

---

[1]    The plea agreement anticipated that the Guidelines range would be 18 to 24 months in prison. Although the PSR correctly calculated the Guidelines range to be 24 to 30 months in prison, the government will make its recommendation based on the Guidelines ranges anticipated in the written plea agreement.

Christopher Rajkaran participated in a complex securities fraud scheme. He and others identified dormant public shell companies and essentially stole them from their existing owners. They then used their control over the companies to issue fraudulent press releases designed to deceive the investing public and fraudulently inflate the price of the stock. He and his co-conspirators then dumped their stock on unsuspecting investors at the inflated prices.

Nothing in Rajkaran's background explains or excuses his crime. Rajkaran was born in Guyana, a country in South American. PSR ¶66. He moved to the United States as a child and grew up in Queens, New York. PSR ¶¶67-68. He played football, wrestled, and ran track in high school. PSR ¶68.

Rajkaran has three children by three different women. PSR ¶69. He has worked in insurance sales and online marketing. PSR ¶¶80-81. Prior to his arrest, he split his time between New York and Guyana. PSR ¶¶71-72.

By imposing a sentence of 18 months, the Court will emphasize that financial crimes will be punished severely, even where the participants are middle class professionals and not street criminals. *United States v. Stefonek*, 170 F.3d 1030, 1038 (7th Cir. 1999) ("Business criminals are not to be treated more leniently than members of the 'criminal class' just by virtue of being regularly employed or otherwise productively engaged in lawful economic activity."); *United States v. Stall*, 581 F.3d 276, 286 (6th Cir. 2009) ("We do not believe criminals with privileged backgrounds are more entitled to leniency than those who have nothing left to lose."). As the Seventh Circuit has explained:

It is natural for judges, drawn as they (as we) are from the middle or upper-middle class, to sympathize with criminals drawn from the same class. But in this instance we must fight out nature. Criminals who have education and training that enables people to make a decent living without resorting to crime are more rather than less culpable than their desperately poor and deprived brethren in crime.

*Stefonek*, 170 F.3d at 1038.

Rajkaran participated in a complex securities fraud scheme. He carried out the scheme with co-conspirators located across the United States. And he did so out of greed, not necessity. In light of the nature complexity of his scheme, a sentence of 18 months is appropriate.

## III.   CONCLUSION

For the reasons stated above, the Government respectfully requests that the Court impose a sentence of 18 months in prison.

Dated: January 11, 2022                         Respectfully Submitted,

CHARLES J. KOVATS, JR.
Acting United States Attorney

 /s/ *Joseph H. Thompson*
BY:     JOSEPH H. THOMPSON
MIRANDA E. DUGI
Assistant U.S. Attorneys