<pre>
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MINNESOTA
 2
      ------------------------------------------------------------
 3                                   )
      United States of America,      ) File No. 21-cr-142(2)
 4                                    )                (DSD/HB)
              Plaintiff,             )
 5                                    )
      v.                             )
 6                                    ) Zoom Video Conference
      Christopher James Rajkaran,    ) Minneapolis, Minnesota
 7                                    ) Thursday, October 7, 2021
              Defendant.             ) 10:35 a.m.
 8                                    )
      ------------------------------------------------------------
 9
                 BEFORE THE HONORABLE DAVID S. DOTY
10            UNITED STATES DISTRICT COURT SENIOR JUDGE
                    CHANGE OF PLEA HEARING
11
      APPEARANCES
12     For the Plaintiff:       UNITED STATES ATTORNEY'S OFFICE
                                BY:  MIRANDA E. DUGI
13                              300 South Fourth Street, #600
                                Minneapolis, Minnesota 55415
14

15     For the Defendant:       RIVERS LAW FIRM, P.A.
                                BY:  BRUCE M. RIVERS
16                              701 Fourth Avenue South, #300
                                Minneapolis, Minnesota 55415
17

18     Transcriber:             RENEE A. ROGGE, RMR-CRR
                                United States Courthouse
19                              300 South Fourth Street, Box 1005
                                Minneapolis, Minnesota 55415
20

21
          Proceedings recorded by electronic sound recording;
22    transcript produced by computer.

23                              *   *   *

24

25
</pre>

2

1                   **P R O C E E D I N G S**

2          **IN OPEN COURT VIA ZOOM VIDEO CONFERENCE**

3               THE COURT:  Good morning.

4               THE DEFENDANT:  Good morning.

5               MR. RIVERS:  Good morning, Your Honor.

6               MS. DUGI:  Good morning, Your Honor.

7               THE COURT:  This morning we have on our docket the

8     matter of United States of America versus Christopher James

9     Rajkaran.

10               And may I have appearances, please?

11               MS. DUGI:  Good morning, Your Honor.  Miranda Dugi

12     on behalf of the United States.

13               THE COURT:  Good morning.

14               MR. RIVERS:  Good morning, Your Honor.  Bruce

15     Rivers on behalf of Mr. Rajkaran.

16               THE COURT:  We also have -- is it -- am I

17     pronouncing the name correctly?  Mr. Rajkaran?

18               THE DEFENDANT:  Yes, sir.

19               THE COURT:  Is that correct?

20               THE DEFENDANT:  Yes, Your Honor.

21               THE COURT:  And I see you also on Zoom.

22               We also have the probation officer with us, and

23     you will find out why we are doing that later.

24               Before I proceed any farther, two things.  Those

25     of you who are not on camera, but listening, would you

1    please mute any device that you are using, if you can.

2    Please mute it.  We're getting some feedback, and it is

3    causing a problem for those of us who have to listen well.

4            Number two, I want to put this finding in the

5    record.  In light of the exigent circumstances brought on by

6    the COVID-19 pandemic, today's change of plea hearing is

7    being conducted by video conference pursuant to the CARES

8    Act.  In accordance with the CARES Act, I specifically find

9    that advancing this case without further delay is in the

10   interests of justice.

11           Does either party object to this finding?

12           MS. DUGI:  No, Your Honor.

13           MR. RIVERS:  No, Your Honor.

14           THE COURT:  All right.  You may also have noticed

15   that this -- this particular hearing is being recorded.  So

16   would the attorneys and everyone who is speaking, please

17   speak very clearly, loudly and enunciate well and slowly

18   enough that a good transcript can be made from the

19   recording.  I know you all want a good record, and that's

20   going to be required.

21           So if you would, Ms. Dugi, why don't you go ahead,

22   please.  Sorry.  One more thing.  I should have sworn the

23   defendant.

24           Mr. Rajkaran, if you would, please, raise your

25   right hand.  Do you swear that the information you are about

1    to give in the proceeding before this court will be the

2    truth, the whole truth and nothing but the truth, so help

3    you God?

4              THE DEFENDANT:  Yes, sir, I do.  Yes, Your Honor.

5              THE COURT:  Thank you.  You can put your hand

6    down, and you may take your seat again.  Thank you.

7              Now, Ms. Dugi, if you would, please, go ahead.

8              MS. DUGI:  Thank you.

9              Mr. Rajkaran, I'm going to ask you a series of

10   questions today, because I understand that you are here

11   because you wish to plead guilty to Count I of the

12   indictment as set forth in the plea agreement.  Is that

13   correct?

14             THE DEFENDANT:  Yes, Ms. Dugi.

15             MS. DUGI:  Okay.  So bear with me.  I have several

16   questions to cover today related to the proceedings, the

17   charges against you and your rights.  These are questions we

18   ask everyone who comes in here to make sure that everyone

19   has a clear understanding.  They are not meant to pry or

20   make you uncomfortable, so just bear with me.  And stop me

21   if I say anything that you don't understand.  Okay?

22             THE DEFENDANT:  Yes, ma'am.

23             MS. DUGI:  Okay.  You can stop at any time to

24   consult your attorney.  And if you have trouble hearing me

25   or need to get my attention, just wave or say my name.

1   Okay?

2              THE DEFENDANT:  No problem.

3              MS. DUGI:  Okay.  So first you have the right to

4   remain silent.  You don't have to answer any questions.  You

5   can stop answering questions at any time and decide not to

6   speak further.  Any statement made today can be used against

7   you.  Do you understand that?

8              THE DEFENDANT:  Yes, Ms. Dugi.

9              MS. DUGI:  Okay.  You have the right to be

10  represented by an attorney.  You could hire one or have one

11  appointed to you if you cannot afford to hire one.  And I

12  understand that Mr. Rivers was previously appointed to

13  represent you, and he's here with you today, correct?

14             THE DEFENDANT:  Yes, sir.  Yes, ma'am.

15             MS. DUGI:  Have you had sufficient time to meet

16  with Mr. Rivers to discuss your case?

17             THE DEFENDANT:  Yes, ma'am.

18             MS. DUGI:  Okay.  Are you satisfied with his

19  representation of you in this case?

20             THE DEFENDANT:  Yes, ma'am.  He's the best.

21             MS. DUGI:  Okay.  So you understand that you've

22  been placed under oath by the court.  And that means that

23  any false statement you make could lead to prosecution for a

24  separate crime of perjury or the government could use any

25  false statement against you.  So it's important to be

1   truthful today.  Do you understand that?

2              THE DEFENDANT:  Yes, ma'am.

3              MS. DUGI:  Okay.  So first I'm going to ask you to

4   state your full name for the record, please.

5              THE DEFENDANT:  Christopher James Rajkaran.

6              MS. DUGI:  Okay.  How old are you, Mr. Rajkaran?

7              THE DEFENDANT:  36 years old.

8              MS. DUGI:  How far did you go in school?

9              THE DEFENDANT:  College, some college.

10             MS. DUGI:  Are you a U.S. citizen?

11             THE DEFENDANT:  Yes, I am.

12             MS. DUGI:  Is it fair to say you can read, speak

13   and understand English?

14             THE DEFENDANT:  Yes, ma'am.

15             MS. DUGI:  Have you had any alcohol, drugs or

16   medications, including over-the-counter or prescription

17   medications, in the past 24 hours?

18             THE DEFENDANT:  No, I have not.

19             MS. DUGI:  Are you currently under the care of a

20   psychologist or mental health professional?

21             THE DEFENDANT:  No, I'm not.

22             MS. DUGI:  Is there anything else that we should

23   be aware of that might impact your ability to understand

24   what's happening here today?

25             THE DEFENDANT:  No, there is not.

1          MS. DUGI:  Fair to say your mind is clear and you

2    understand what you are here to do today?

3          THE DEFENDANT:  Yes, I am.

4          MS. DUGI:  Okay.  Now, you've been charged by

5    what's called an indictment.  Have you received a copy of

6    that indictment?

7          THE DEFENDANT:  Yes, I have.

8          MS. DUGI:  Okay.  And you've been charged with

9    crimes.  And, specifically, we're going to talk mostly about

10   Count 1 of the indictment today, which I understand you

11   intend to plead guilty to, correct?

12         THE DEFENDANT:  Yes.  Yes, ma'am.

13         MS. DUGI:  Have you had sufficient time to review

14   the indictment and to consult your attorney about it?

15         THE DEFENDANT:  Yes, ma'am.

16         MS. DUGI:  Okay.  So before you can enter a plea

17   of guilty, we have to make sure you understand the rights

18   you are giving up by entering a guilty plea.  So bear with

19   me.  I have several things to review here.

20         First, you have the right to plead not guilty or

21   to persist in that plea.  Do you understand that?

22         THE DEFENDANT:  Yes, I do.

23         MS. DUGI:  You have the right to be tried by a

24   jury of 12 people, who would unanimously -- who would have

25   to unanimously agree that you are guilty, or, with the

1    government's and court's consent, to trial by the court.  Do

2    you understand that?

3              THE DEFENDANT:  Yes, I do.

4              MS. DUGI:  You would have the right to assistance

5    of an attorney at trial and to have one appointed, if

6    needed, and you have that right throughout the proceedings.

7    That's including trial and any subsequent proceedings

8    thereafter.  Do you understand that?

9              THE DEFENDANT:  Yes, ma'am.  Yes, I do.

10             MS. DUGI:  Okay.  You have the right to be

11   presumed innocent until proven guilty.  Do you understand

12   that?

13             THE DEFENDANT:  Yes, ma'am.  Yes, I do.

14             MS. DUGI:  You would have the right to require the

15   government to prove its case beyond a reasonable doubt.  Do

16   you understand that right?

17             THE DEFENDANT:  Yes, ma'am.

18             MS. DUGI:  Okay.  At trial you would have the

19   right to testify on your own behalf, if you chose to, but

20   you would also have the right not to testify, if you did not

21   want to, and the government could not comment about your

22   choice not to testify.  Do you understand that?

23             THE DEFENDANT:  Yes, I do.

24             MS. DUGI:  At trial you would have the right to

25   call witnesses.  If you wanted to call a witness and that

1    person did not wish to come to court, you could have the

2    court compel a witness to testify through a subpoena.  Do

3    you understand those rights?

4              THE DEFENDANT:  Yes, I do.

5              MS. DUGI:  You would also have the right to bring

6    motions to challenge the evidence against you.  Do you

7    understand that right?

8              THE DEFENDANT:  Yes, I do.

9              MS. DUGI:  You would have the right to a speedy

10   trial.  That would mean it would have to occur within

11   70 days of your initial appearance or, you know, with

12   additional times tweaked in in terms of COVID-19 or other

13   proceedings shortly thereafter.  It wouldn't be a matter of

14   years and years.  It would be a matter of weeks or months.

15   Do you understand that?

16             THE DEFENDANT:  Yes, I do.

17             MS. DUGI:  So by pleading guilty today, you are

18   giving up these rights that we've reviewed, except the right

19   to counsel, and that you will have no trial of any kind if

20   you plead guilty.  Do you understand that?

21             THE DEFENDANT:  Yes, I do.

22             MS. DUGI:  Okay.  If you enter a plea of guilty,

23   you can't change your mind later and withdraw your plea.  Do

24   you understand that?

25             THE DEFENDANT:  Yes, I do.  Yes, I do.

1    MS. DUGI:  Do you have any questions as to the

2    rights that you are waiving by pleading guilty here today?

3         THE DEFENDANT:  No, ma'am.  I'm alert and went

4    over all this with him.  Thank you.

5         MS. DUGI:  And is it fair to say that you

6    voluntarily waive these rights, except the right to counsel?

7         THE DEFENDANT:  Yes, I do.

8         MS. DUGI:  Okay.  So I understand that you are

9    intending to enter into a plea agreement with the

10   government, correct?

11        THE DEFENDANT:  Yes, ma'am.

12        MS. DUGI:  Have you had an opportunity to review

13   that agreement with your attorney?

14        THE DEFENDANT:  Yes, I have.

15        MS. DUGI:  Okay.  Do you have a copy of that

16   agreement with you right now?

17        THE DEFENDANT:  Yes, ma'am.

18        MS. DUGI:  You do.  Okay.  I'm going to ask --

19        THE DEFENDANT:  The one that I signed -- go ahead.

20        MS. DUGI:  Okay.  Great.  I'm going to ask you to

21   turn to the last page of that agreement.  And you referred

22   to having --

23        THE DEFENDANT:  Page 12?

24        MS. DUGI:  Yes.

25        THE DEFENDANT:  Yes, ma'am.

1          MS. DUGI:  And you referred to having signed that,

2     correct?

3          THE DEFENDANT:  Yes, ma'am.

4          MS. DUGI:  Is that your signature on the second

5     line?

6          THE DEFENDANT:  Yes, ma'am.  Dated 10-6-2021.

7          MS. DUGI:  Okay.  Great.  And underneath that is

8     your attorney's signature, correct?

9          THE DEFENDANT:  Yes.  I don't have a copy.  He

10    didn't get a chance to sign it and send it back to me, but I

11    have -- that's his name, yes.

12         MS. DUGI:  Okay.  On your behalf Mr. Rivers

13    forwarded a signed copy with both of your signatures, and I

14    have submitted a signed copy including my signature as well.

15    We can provide a copy of that now to you or after the

16    hearing.  It's up to you.

17         THE DEFENDANT:  After the hearing is perfectly

18    fine.

19         MS. DUGI:  Okay.  Great.  So we have a 12-page

20    agreement here.  And I'm going to review the terms of this

21    agreement with you starting on the first page and, again,

22    asking for your patience because we have a lot to go over,

23    so forgive me.

24         THE DEFENDANT:  Take your time.  No rush.

25         MS. DUGI:  Okay.  So we have the first paragraph

1    here relates to the parties' agreement to resolve this case

2    on the terms and conditions that follow.  The agreement

3    binds only you and the U.S. Attorney's Office for the

4    District of Minnesota and not any other U.S. Attorney's

5    Office or other federal or state agency.  Do you understand

6    that?

7              THE DEFENDANT:  Yes, ma'am.

8              MS. DUGI:  Okay.  In paragraph 1 you're agreeing

9    to plead guilty to Count 1 of the indictment, which charges

10   you with conspiracy to commit securities fraud, in violation

11   of Title 18 United States Code Section 371 and Title 15

12   United States Code Sections 78j(b) and 78ff.  I'm going to

13   review the elements of those charges briefly with you.

14             And before I do that, we will just note here at

15   the end of this paragraph that at the time of sentencing the

16   government is agreeing to move to dismiss the remaining

17   counts of the indictment against you.  Do you understand all

18   of what I have just reviewed in this paragraph?

19             THE DEFENDANT:  Yes, ma'am.

20             MS. DUGI:  Okay.  So let's review the elements of

21   the charge against you.

22             So with respect to conspiracy, that means that the

23   government would have to prove beyond a reasonable doubt, if

24   this went to trial, that you and at least one other person

25   agreed to try to accomplish a crime, specifically here

1    securities fraud, and that you knew the unlawful purpose of

2    the agreement and you willfully joined the agreement.  That

3    doesn't mean you have to know the entire plan or everyone

4    involved in the plan.  Do you understand that so far?

5                 THE DEFENDANT:  Yes, ma'am.

6                 MS. DUGI:  Okay.  The government would also have

7    to prove that one member of the conspiracy committed an

8    overt act in furtherance of the conspiracy.  Do you

9    understand that?

10                THE DEFENDANT:  Yes, ma'am.

11                MS. DUGI:  Okay.  And the object of the conspiracy

12   here is securities fraud, so the elements of securities

13   fraud are lengthy.  So I'm going to review all of them at

14   once and then ask you if you have any questions about what

15   I've reviewed.

16                So, first, that in connection with an offer,

17   purchase or sale of securities, you, directly or through

18   others, employed a device or a scheme to defraud or employed

19   a manipulative or deceptive device or contrivance, meaning

20   an intentional conduct, designed to deceive or defraud a

21   person by controlling or artificially affecting the price of

22   securities or deliberately making a misstatement or omission

23   of a material fact, including nonverbal conduct such as

24   producing false documents.  Do you understand those so far?

25                THE DEFENDANT:  Yes, ma'am.

1      MS. DUGI:  Okay.  Another way you can do that
2   would also be, in connection with the offer of purchase or
3   sale of securities, you, directly or through others, could
4   obtain money or property by means of any untrue statement of
5   a material fact or obtain money or property by failing to
6   state a material fact or the absence of that fact and if the
7   statement is misleading under the circumstances or engaged
8   in a transaction, practice or course of business that
9   operated or would operate as a fraud or deceit upon any
10  person.  Okay.  So those are all the different ways you
11  could have violated the crime, and that would be the first
12  element.  Do you understand that?
13      THE DEFENDANT:  Yes, ma'am.
14      MS. DUGI:  Okay.  So with respect to the rest of
15  securities fraud, you would have had to have acted
16  knowingly, voluntarily and intentionally and with the intent
17  to defraud and finally made use of, caused to be made --
18  excuse me -- caused to be used the mails or a means or
19  instrument of transportation or communication or a means or
20  instrumentality of interstate commerce.  So that just means
21  something that crosses a state boundary.  That could be via
22  the internet or telephone wire or anything else.  Do you
23  understand all of those elements we just reviewed?
24      THE DEFENDANT:  Yes, I do, ma'am.  Yes, I do.
25      MS. DUGI:  Okay.  Great.  So I'm going to skip the

1    factual basis, which is in paragraph 2.  We'll come back to

2    that at the end.

3            So now I'm going to turn to page 4 of the plea

4    agreement and look at paragraph 3.  So we discussed your

5    right to challenge the evidence against you in pretrial

6    motions.  This paragraph just acknowledges that you're

7    agreeing to waive your right to file pretrial motions in

8    this case.  Do you understand that?

9            THE DEFENDANT:  Yes, ma'am.

10           MS. DUGI:  Okay.  Paragraph 4 relates to all the

11   constitutional trial rights that we just reviewed together.

12   Do you have any questions about those rights before we go

13   forward?

14           THE DEFENDANT:  No, ma'am.

15           MS. DUGI:  Paragraph 5 relates to additional

16   consequences.  Here you note that you understand that as a

17   result of your conviction you could experience additional

18   consequences, including the loss of the right to carry

19   firearms, the right to vote and the right to hold public

20   office.  Do you understand those potential consequences?

21           THE DEFENDANT:  Yes, ma'am, I do.

22           MS. DUGI:  Okay.  Paragraph 6 relates to the

23   statutory penalties that may apply in your case.  And here

24   you acknowledge that you understand like the charges against

25   you that you are pleading guilty to in Count 1 carry a

1    maximum statutory penalty of five years in prison, a

2    supervised release term of not more than three years, a

3    maximum fine of $250,000 or twice the gross gain or loss

4    caused by the offense, whichever is greater, restitution is

5    agreed to by the parties in the agreement and a mandatory

6    special assessment of $100.  Do you understand that those

7    are the maximum statutory penalties?

8                   THE DEFENDANT:  Yes, ma'am, I do.

9                   MS. DUGI:  Okay.  Paragraph 7 relates to the U.S.

10   Sentencing Guidelines.  So in this paragraph the parties

11   acknowledge that you will be sentenced in accordance with

12   certain statutes related to sentencing under U.S. law, but

13   that nothing in the agreement should be construed to limit

14   the parties from presenting relevant evidence to the court

15   at sentencing.  And we also acknowledge that the court will

16   have to consider the advisory U.S. Sentencing Guidelines in

17   determining the appropriate sentence.  We also agree or

18   stipulate to certain guidelines calculations in the

19   paragraphs that follow here.  Do you understand all of that

20   so far?

21                  THE DEFENDANT:  Yes, ma'am.

22                  MS. DUGI:  Okay.  So the agreements or

23   stipulations that we've entered begin with subparagraph (a)

24   here at the bottom of page 5.  So first we agree that the

25   base offense level is 6.  Correct?

1      THE DEFENDANT:  Yes, ma'am.

2      MS. DUGI:  Okay.  We also agree that certain

3  specific offense characteristics apply.  So first that the

4  offense level should be increased by 10 levels because the

5  loss was more than 150,000, but less than $250,000.

6  Correct?

7      THE DEFENDANT:  Yes, ma'am.

8      MS. DUGI:  We also agree that the offense level

9  should be increased by 2 levels because the offense involved

10  sophisticated means.  Correct?

11      THE DEFENDANT:  Yes, ma'am.

12      MS. DUGI:  And finally the parties agree that no

13  other specific offense characteristics apply.  Correct?

14      THE DEFENDANT:  Yes, ma'am.

15      MS. DUGI:  Okay.  So paragraphs (c) and (d) here

16  relate to Chapter 3 adjustments.  And here we're agreeing

17  that the only applicable Chapter 3 adjustments relate to

18  acceptance of responsibility.  Correct?

19      THE DEFENDANT:  Yes, ma'am.

20      MS. DUGI:  Okay.

21      THE DEFENDANT:  But first can I interject with the

22  minor participant here, or that is something that we're just

23  going through the plea?

24      MS. DUGI:  Do you want to take a moment and see if

25  you want to have a break-out room with Mr. Rivers?

1              THE DEFENDANT:  Yeah, I just need to ask him a
2    quick question.  Yes, please, if I could ask him a quick
3    question.  Thank you.
4              MS. DUGI:  Your Honor, if we may ask the clerk to
5    assist us in getting a break-out room for Mr. Rivers and
6    Mr. Rajkaran?
7              THE COURT:  Yes.  Yes, I will do that.
8              MS. DUGI:  Thank you, Your Honor.
9              THE COURT:  And would you do that, please?
10             MR. RIVERS:  While we're at it, if we could have
11   whoever is on Chris's Galaxy A51, please mute yourself,
12   please.
13             THE COURT:  We'll wait a few minutes.  There we
14   go.  All right.
15             (Break taken.)
16             THE COURT:  This technology is amazing when it
17   works, but sometimes we have little hiccups, and I'm not
18   sure what the issue is now.  Sometimes dealing with
19   Sherburne County is more difficult, so we'll see what
20   happens here.
21             MR. RIVERS:  And, Your Honor, when Mr. Rajkaran
22   does come back, we should put our -- a little something on
23   the record over what we talked about.
24             THE COURT:  Okay.  Well, let's wait for him to
25   show up because I think, as we are doing all of this remote,

19

1    I think he should be on the remote showing also, just as if

2    we would ensure that he's in the courtroom when anything is

3    said about the case.

4              MR. RIVERS:  For sure.

5              THE COURT:  I'm wondering about the background

6    that you all have.  You all have the same virtual

7    background, and it looks a lot like my courtroom except one

8    thing.  My chairs in my courtroom on either side of the door

9    are -- have a maroon fabric, rather than a green leather.

10             What courtroom is that?  Do you know, Ms. Dugi, or

11   Ms. De La Rivera?

12             MS. DUGI:  I don't know which one it is, Your

13   Honor.  This is the, sort of, standard Minneapolis courtroom

14   background they assigned to us.

15             THE COURT:  I know what it is and just as I

16   have -- I'm actually in the courtroom.  So what you are

17   seeing is an actual picture taken by those cameras that you

18   see in your video.

19             We now have Mr. Rajkaran back with us.

20             And so why don't you go ahead, Mr. Rivers.  And

21   Mr. Rivers wanted to put something on the record.  So go

22   ahead, please.

23             MR. RIVERS:  If I might inquire of Mr. Rajkaran,

24   Your Honor?

25             THE DEFENDANT:  Yes.

1    MR. RIVERS:  Mr. Rajkaran, we have spoken about a

2    particular Chapter 3 adjustment.  And that would be the

3    adjustment for minor role, correct?

4    THE DEFENDANT:  Yes, sir.

5    MR. RIVERS:  And you had asked me to reach out to

6    Mr. Thompson or to the government and to see if they would

7    agree to a minor role adjustment, correct?

8    THE DEFENDANT:  Yes, sir.  Yes, sir.

9    MR. RIVERS:  Or at least let us argue it, correct?

10   THE DEFENDANT:  Yes, sir.  Yes, sir.  Thank you.

11   MR. RIVERS:  To date I have not heard back from

12   the government on that issue, and it's not -- it wouldn't be

13   part of this agreement.  We're free to argue for whatever

14   sentence we think is appropriate.  There's no floor, in

15   other words, to argue for whatever sentence that we believe

16   would be just.  And knowing that we don't have an agreement

17   as to the minor role adjustment, would you like to go

18   forward with the plea today?

19   THE DEFENDANT:  Yes, sir.

20   MR. RIVERS:  I offer that as the recitation issue.

21   THE DEFENDANT:  Thank you.  I appreciate that,

22   sir.  Thank you, Mr. Rivers.

23   MR. RIVERS:  Nothing further, Your Honor.

24   THE DEFENDANT:  Thank you.  Thank you.

25   THE COURT:  Okay.  Thank you.

1          Ms. Dugi, why don't you continue, if you would,

2     please.

3          MS. DUGI:  Okay.  Thank you, Your Honor.

4          And just to be clear with Mr. Rivers and

5     Mr. Rajkaran, you have not been offered a plea agreement

6     that included a minor role adjustment, correct?

7          THE DEFENDANT:  I understand that.

8          MS. DUGI:  Okay.  So here in this agreement that

9     you are entering into today, there's no agreement regarding

10    the application of a minor role adjustment.  In fact, the

11    parties are agreeing that it does not apply, that, as we'll

12    get to later in the agreement, you're free to argue for

13    whatever sentence you believe to be appropriate, as

14    Mr. Rivers just said.  Is that correct?

15         THE DEFENDANT:  Completely understand that.

16         MS. DUGI:  Okay.  So with respect to acceptance of

17    responsibility, I'm on page 6, paragraph (d).  And here the

18    government's agreeing to recommend that you receive a total

19    of 3 levels reduction for acceptance of responsibility.  And

20    that's related to your timely acceptance and your acceptance

21    of responsibility well in advance of trial.  Do you

22    understand that?

23         THE DEFENDANT:  Yes, ma'am.

24         MS. DUGI:  Okay.  You are also noting in this

25    paragraph, however, that you understand that the

1    government's agreement to make that recommendation is

2    contingent upon certain conditions.  So first that you

3    testify truthfully today and at any sentencing hearings;

4    second, that you provide full, complete and truthful

5    information to the U.S. Probation Office during the

6    presentence investigation; and, third, that you engage in no

7    conduct inconsistent with acceptance of responsibility prior

8    to sentencing, and that includes frivolously denying facts

9    in the presentence report.  Do you understand those

10   conditions?

11        THE DEFENDANT:  Yes, ma'am.

12        MS. DUGI:  Okay.  And then finally nothing in the

13   plea agreement limits the right of the government under this

14   guideline provision 3E1.1 or 3C1.1 to seek denial of

15   reduction for acceptance of responsibility or an enhancement

16   for obstruction of justice if you engage in any conduct

17   inconsistent with acceptance of responsibility, and that

18   includes moving to withdraw your guilty plea after it's

19   entered.  Do you understand that?

20        THE DEFENDANT:  Yes, ma'am.

21        MS. DUGI:  Okay.  And the next paragraph related

22   to criminal history category.  We note that we believe that

23   your criminal history category will be I, but we understand

24   and agree that this is not a stipulation, but an estimation,

25   and that it will be up to the court to make a final

1  determination of your criminal history category based on the

2  presentence investigation report.  Do you understand that?

3              THE DEFENDANT:  Yes, ma'am.

4         MS. DUGI:  Okay.  If that determination is

5  something you weren't expecting and potentially increases

6  your guideline range, you would not have the right to

7  withdraw from this plea agreement.  Do you understand that?

8              THE DEFENDANT:  Yes, ma'am.

9         MS. DUGI:  So finally based on all these

10  calculations and stipulations, we agree that if the adjusted

11  offense level is 15 and the criminal history category is I,

12  the sentencing guideline range would be 18 to 24 months of

13  imprisonment.  Correct?

14              THE DEFENDANT:  Yes, ma'am.

15         MS. DUGI:  And in subparagraph (g) we note that if

16  the adjusted offense level is 15, the applicable fine range

17  would be between 7,500 and $75,000; is that correct?

18              THE DEFENDANT:  Yes, ma'am.

19         MS. DUGI:  Okay.  Paragraph 8 we note that your --

20  you understand that if you were to violate any condition of

21  supervised release -- so that's the period of time that

22  follows after any release from prison -- that you could be

23  sentenced to an additional term of imprisonment up to the

24  length of the original supervised release term.  Do you

25  understand that?

24

1                THE DEFENDANT:  Yes, ma'am.

2                MS. DUGI:  Okay.  So all of the stipulations that

3      we just talked about are binding on the parties, but not on

4      the probation office or the court.  And we note here that we

5      understand that the sentencing guidelines are advisory and

6      that it's up to the court to decide whether and how to apply

7      them.  Do you understand that?

8                THE DEFENDANT:  Yes, ma'am.

9                MS. DUGI:  Okay.  The court may decide that

10     certain guidelines apply or that others do not, and the

11     court may also decide to depart from the guidelines or

12     choose not to apply certain guidelines.  Do you understand

13     that?

14               THE DEFENDANT:  Yes, I do.

15               MS. DUGI:  Okay.  And now if the court or the

16     probation office makes the determination and it's something

17     that you weren't expecting or is less favorable to you, you

18     will not be able to withdraw from this plea agreement.  Do

19     you understand that?

20               THE DEFENDANT:  Yes, I do.

21               MS. DUGI:  Okay.  And now we've discussed this

22     briefly before, but, just to be clear, in paragraph 10 the

23     parties are free to recommend whatever sentence they deem

24     appropriate and reserve the right to make a motion for

25     departures from the applicable guideline range, to oppose

1    any such motion and to argue for a sentence outside the

2    applicable guideline range.  That's sometimes called a

3    variance.  Do you understand that?

4              THE DEFENDANT:  Yes, I do.

5              MS. DUGI:  And, again, if the court decides that

6    our recommendations are not appropriate and it wishes to

7    sentence you to something different than what you expect or

8    were hoping for, you will not be able to withdraw your

9    guilty plea.  Do you understand that?

10             THE DEFENDANT:  Yes, I do.

11             MS. DUGI:  Okay.  Paragraph 11.  This relates to a

12   mandatory special assessment of $100 that applies to the

13   count of conviction.  And you are agreeing to pay it prior

14   to sentencing; is that correct?

15             THE DEFENDANT:  Yes, ma'am.

16             MS. DUGI:  Paragraph 12.  We agree that the

17   Mandatory Victim Restitution Act does not apply and that

18   determining complex issues of fact related to the cause or

19   amount of victim's losses would complicate or prolong the

20   sentencing process to a degree that the need to provide

21   restitution to any victim is outweighed by the burden on the

22   sentencing process.  Do you understand that?

23             THE DEFENDANT:  Yes, I do.

24             MS. DUGI:  Okay.  Paragraph 13 relates to

25   forfeiture.  And here you're agreeing to forfeit to the

1    United States any property, that includes real or personal

2    property, which constitutes or is derived from proceeds

3    traceable to the securities fraud scheme charged in Count 1

4    of the indictment, correct?

5              THE DEFENDANT:  Yes, I do.

6              MS. DUGI:  You are also agreeing to forfeit

7    property used or intended to be used to commit, facilitate

8    or promote the commission of the securities fraud scheme

9    charged in Count 1 of the indictment and any property

10   constituting, derived from or traceable to the gross

11   proceeds that you obtained, directly or indirectly, as a

12   result of that offense; is that correct?

13             THE DEFENDANT:  Yes, I do.

14             MS. DUGI:  In the next paragraph you consent to

15   the entry of a money judgment of forfeiture in the amount of

16   $53,487, correct?

17             THE DEFENDANT:  Yes, I do.

18             MS. DUGI:  And you are agreeing that the amount of

19   the proceeds you obtained, directly or indirectly, as a

20   result of this scheme equals or exceeds this amount,

21   correct?

22             THE DEFENDANT:  Yes, I do.

23             MS. DUGI:  Okay.  The United States is reserving

24   its right to forfeit substitute assets and additional

25   directly forfeitable property, and you are waiving all

1  statutory and constitutional defenses to forfeiture and any

2  right to contest or challenge in any manner such forfeitures

3  on any grounds.  Do you understand that?

4          THE DEFENDANT:  Yes, I do.

5          MS. DUGI:  Okay.  Paragraph 14 relates to your

6  agreement to provide full and complete information to the

7  United States Attorney's Office regarding the existence and

8  location of the assets, correct?

9          THE DEFENDANT:  Yes, I do.

10          MS. DUGI:  Have you had an opportunity to review

11  this paragraph with your attorney, and you agree to

12  everything in it?

13          THE DEFENDANT:  Yes, I do.  Yes, I did, and, yes,

14  I agree.

15          MS. DUGI:  Okay.  And this involves your

16  submission of certain information to the United States

17  Attorney's Office regarding your assets as well, correct?

18          THE DEFENDANT:  Yes, ma'am.

19          MS. DUGI:  Okay.  Paragraph 15 relates to your

20  waiver of venue.  So that means that recognizing that the

21  criminal conduct in this case occurred in the State and

22  District of Minnesota and elsewhere in the United States,

23  you are waiving all rights to challenge venue in the State

24  and District of Minnesota; is that correct?

25          THE DEFENDANT:  Yes, I am.

1    MS. DUGI:  Okay.  Paragraph 16 relates to possible

2    immigration consequences.  So here you note that you

3    understand that pleading guilty may have consequences with

4    respect to your immigration status, including removal or

5    deportation.  You understand that no one, including your

6    attorney, the government or the court, can predict to a

7    certainty the effect of the conviction on your immigration

8    status.  And regardless of any immigration consequences that

9    may follow, even automatic removal or deportation from the

10   United States, you still wish to plead guilty as set forth

11   in the agreement, correct?

12        THE DEFENDANT:  Yes, I do.

13        MS. DUGI:  Paragraph 17 relates to your waiver of

14   appeal and collateral attack rights.  So here you're waiving

15   the right to appeal any non-jurisdictional issues.  This

16   appeal waiver includes, but is not limited to, your waiver

17   of the right to appeal guilt or innocence, your sentence and

18   restitution, and the constitutionality of the statutes to

19   which you are pleading guilty, correct?

20        THE DEFENDANT:  Yes, that is correct.

21        MS. DUGI:  All right.  The parties are agreeing,

22   however, that excluded from the waiver is an appeal of the

23   substantive reasonableness of a term of imprisonment.  And

24   you reserve the right to appeal the substantive

25   reasonableness of a term of imprisonment over 24 months of

1       imprisonment, and the government reserves the right for a

2       sentence below 18 months of imprisonment, correct?

3                    THE DEFENDANT:  Yes, I do.

4                    MS. DUGI:  Okay.  And you're also waiving the

5       right to petition under Title 28 United States Code

6       Section 2255 -- this is sometimes called collaterally

7       attacking your sentence or conviction -- except based on a

8       claim of ineffective assistance of counsel.  Is that

9       correct?

10                   THE DEFENDANT:  That is correct.

11                   MS. DUGI:  Okay.  And fair to say you've discussed

12      these rights with your attorney, you understand these rights

13      being waived, and you are waiving these rights knowingly,

14      intelligently and voluntarily, correct?

15                   THE DEFENDANT:  I am.

16                   MS. DUGI:  Okay.  We are almost done.  So

17      paragraph 18 relates to Freedom of Information Act and

18      privacy act requests.  And here you are waiving all rights

19      to obtain information under those statutes; is that correct?

20                   THE DEFENDANT:  That is correct.

21                   MS. DUGI:  Okay.  And finally the last paragraph,

22      paragraph 19.  You're acknowledging here that you've read

23      the plea agreement and carefully reviewed each provision

24      with your attorney, you understand and acknowledge that you

25      understand and voluntarily accept every term and condition

1    in this plea agreement and that this plea agreement, along

2    with any agreement signed by the parties before the entry of

3    the plea, is the entire agreement and understanding between

4    the United States and you, correct?

5              THE DEFENDANT:  Yes, I do.

6              MS. DUGI:  Okay.  So with the exception of the

7    factual basis, that will be all for the plea agreement.  So

8    I'm going to turn now to page 1, paragraph 2, related to the

9    factual basis.

10             So I know I've asked you this a million times, but

11   bear with me.  You've had the opportunity to review the

12   factual basis yourself and with your attorney, correct?

13             THE DEFENDANT:  Yes, I have.

14             MS. DUGI:  Okay.  And fair to say it truly and

15   correctly states what happened in this case?

16             THE DEFENDANT:  Yes, it has.

17             MS. DUGI:  All right.  And you don't dispute any

18   of the facts identified in paragraph 2, correct?

19             THE DEFENDANT:  No, I do not.

20             MS. DUGI:  Okay.  So I'm going to review

21   paragraph 2 with you now.  So you're pleading guilty because

22   you're in fact guilty --

23             THE COURT:  Ms. Dugi.  Ms. Dugi.

24             MS. DUGI:  Yes, Your Honor.

25             THE COURT:  Ms. Dugi, may I interrupt you?  I

1    don't know if you are hearing it, but we're having some

2    interference.

3          And if somebody that's listening in does not mute

4    and cannot mute, please stop doing something with the

5    transmitter.  It's transmitting interference, so -- and it's

6    interrupting our ability to hear, so -- it stopped now.

7          So why don't you go ahead, please, and maybe

8    repeat the last sentence or so that you just had, because I

9    want to make sure you have a good recording also as well as

10   us hearing.

11          MS. DUGI:  Thank you, Your Honor.

12          So we're reviewing the factual basis of your

13   guilty plea.

14          THE DEFENDANT:  Yes.

15          MS. DUGI:  And here we're at paragraph 2 at the

16   bottom of page 1.  So here you're agreeing to plead guilty

17   because --

18          I believe we're hearing some reverb of my voice,

19   Your Honor.  So we may ask -- I believe there are two other

20   parties not muted.  Chris's Galaxy A51 and Mr. Rivers and

21   Mr. Rajkaran.  I know Mr. Rajkaran can't mute.  So I think

22   if those other two parties can mute, that will be the

23   remedy, or if the clerk could force mute the other party who

24   is not muted.

25          THE COURT:  I'm not sure -- let me ask my clerk.

1    I'm having trouble understanding exactly what you asked for,

2    please.  Hang on just a second.

3              (Off record discussion.)

4              THE COURT:  So I'm understanding you are getting

5    the same kind of feedback we were getting that's causing you

6    trouble, correct?

7              MS. DUGI:  Yes, Your Honor.  I believe we're

8    hearing my voice echoing on someone else's feed that's not

9    muted, and I believe that's Chris's Galaxy A51 now.

10             THE COURT:  Okay.  If the people who are listening

11   in, please get -- please take the microphone away from the

12   loudspeaker, so you don't get a feedback.  Put your hand

13   over it, if it's a phone.  Listen, but don't get the

14   feedback, if you would.  See if that stops it.

15             MS. DUGI:  Okay.  Thank you, Your Honor.

16             THE COURT:  Okay.  Go ahead.

17             MS. DUGI:  Okay.  So, Mr. Rajkaran, fair to say

18   we're talking about the factual basis, which you've reviewed

19   previously yourself and with your attorney, correct?

20             THE DEFENDANT:  Yes, ma'am.

21             MS. DUGI:  Okay.  And you're admitting to these

22   facts because you are in fact guilty of Count 1 of the

23   indictment and that the following facts establish your guilt

24   beyond a reasonable doubt and constitute relevant conduct

25   under the sentencing guidelines, correct?

1          THE DEFENDANT:  Yes, ma'am.

2          MS. DUGI:  Okay.  So from at least in or about

3     2017 through in or about 2019, in the State and District of

4     Minnesota and elsewhere, you did knowingly and willfully,

5     directly and indirectly, by use of the means and

6     instrumentalities of interstate commerce, the mails and the

7     facilities of national securities exchanges, use and employ

8     manipulative and deceptive devices and contrivances in

9     connection with the purchase and sale of securities, in

10    violation of the statute set forth here, by employing

11    devices, schemes and artifices to defraud, by making an

12    untrue statement of material fact and omitting to state the

13    material fact necessary in order to make the statements

14    made, in light of the circumstances under which they were

15    made, not misleading and engaging in acts, practices, and

16    courses of business which operated and would operate as a

17    fraud and deceit upon persons, in violation of the statutes

18    set forth here; is that correct?

19         THE DEFENDANT:  Yes, ma'am, that is correct.

20         MS. DUGI:  All right.  More specifically, you

21    participated in a scheme to hijack and assume control over

22    dormant public shell companies and used that control to

23    fraudulently manipulate the price of the company's stock so

24    that the conspirators could profit from the sale of stock at

25    fraudulently inflated and pumped-up prices, correct?

1        THE DEFENDANT:  Yes, I am.

2        MS. DUGI:  Okay.  As part of this scheme, you and

3   your coconspirators identified dormant public shell

4   companies, that is, publicly traded companies without active

5   operations that stopped filing their required Securities and

6   Exchange Commission or SEC and security of state filings --

7   or excuse me -- secretary of state filings, correct?

8        THE DEFENDANT:  Yes, ma'am.

9        MS. DUGI:  And these dormant public shell

10   companies traded publicly on over-the-counter stock market

11   or OTC stock market, correct?

12        THE DEFENDANT:  Correct.

13        MS. DUGI:  And they generally traded for fractions

14   of pennies per share?

15        THE DEFENDANT:  Correct.

16        MS. DUGI:  You and your coconspirators then bought

17   stock in the dormant public shell companies at low prices in

18   the OTC market, correct?

19        THE DEFENDANT:  Correct.

20        MS. DUGI:  And you and your coconspirators were

21   able to obtain hundreds of thousands or even millions of

22   shares because the stocks traded at only a fraction of a

23   penny per share, correct?

24        THE DEFENDANT:  Correct.

25        MS. DUGI:  After buying stock in the dormant

1    public shell companies, you and your coconspirators hijacked

2    and took control over the companies by creating and filing

3    fake resignation letters and board minutes purporting to

4    announce the resignation of the prior corporate officers and

5    the appointment of one or more of the conspirators as new

6    officers and board members, correct?

7              THE DEFENDANT:  Correct.

8              MS. DUGI:  You and your coconspirators used these

9    fake documents to gain access to and control over the

10   companies' accounts with the SEC's Electronic Data

11   Gathering, Analysis and Retrieval or EDGAR system, correct?

12             THE DEFENDANT:  Correct.

13             MS. DUGI:  And this allowed you and your

14   coconspirators to make public filings on behalf of the

15   hijacked companies, correct?

16             THE DEFENDANT:  Correct.

17             MS. DUGI:  You and your coconspirators used your

18   control over the hijacked companies to issue fraudulent

19   press releases and public filings designed to fraudulently

20   inflate and pump up the price of the hijacked companies'

21   stock, correct?

22             THE DEFENDANT:  Correct.

23             MS. DUGI:  Finally, you and your coconspirators

24   sold or dumped your stock at the fraudulently inflated and

25   pumped-up stock prices to unsuspecting investors, correct?

1              THE DEFENDANT:  Correct.

2              MS. DUGI:  And the last paragraph.  As part of the

3    conspiracy, you and your coconspirators were involved in

4    hijacking a number of public shell companies, including Bell

5    Buckle Holdings, Incorporated, whose ticker symbol was BLLB,

6    and other companies, correct?

7              THE DEFENDANT:  Correct.

8              MS. DUGI:  Okay.  That's it for the factual basis.

9    So I just have a couple more questions, and we'll be done

10   for my part here.

11             So, Mr. Rajkaran, is it fair to say that you're

12   here of your own free will?

13             THE DEFENDANT:  I am.

14             MS. DUGI:  Okay.  Has anyone forced you to plead

15   guilty here today?

16             THE DEFENDANT:  No one has, no.

17             MS. DUGI:  Other than what's in the plea

18   agreement, has anyone made any threats or promises to you in

19   order to get you to plead guilty here today?

20             THE DEFENDANT:  No, they have not.

21             MS. DUGI:  Okay.  You understand if you plead

22   guilty here today you are waiving the rights we previously

23   discussed; and if the court accepts your guilty plea, you

24   can't change your mind or withdraw your guilty plea here,

25   correct?

1              THE DEFENDANT:  Correct.

2              MS. DUGI:  Okay.  Do you wish the court to accept

3     your plea of guilty here today?

4              THE DEFENDANT:  Yes, I do.

5              MS. DUGI:  Okay.  Your Honor, I believe that's all

6     for me today.  Thank you.

7              THE COURT:  All right.  Thank you, Ms. Dugi.

8              Mr. Rivers, do you have any questions or comments

9     you'd like to put on the record at this point?  I didn't

10    hear.  I'm sorry.  Maybe you are muted.

11             MR. RIVERS:  Yeah, I was muted.  Sorry.

12             THE COURT:  Okay.

13             MR. RIVERS:  No, I do not have anything further,

14    Your Honor.

15             THE COURT:  All right.  Thank you.

16             Mr. Rajkaran, I'm going to have some questions of

17    you that are similar, maybe even the same that you've

18    already been asked, but I have my own reasons for doing

19    this.

20             The first question I always have of someone who is

21    appearing at a hearing like this is whether you're here at

22    this hearing voluntarily.  Are you?

23             THE DEFENDANT:  Yes, I am, sir.

24             THE COURT:  And in any sense of the word, has

25    anyone threatened you, coerced you or in any way forced you

1      to plead guilty today?

2              THE DEFENDANT:  No, Your Honor.

3              THE COURT:  And when I say "anyone," I mean that,

4      your own lawyer, your family, agents, whatever.  Anybody?

5              THE DEFENDANT:  No, Your Honor.

6              THE COURT:  All right.  And on the other side of

7      that coin, has anyone made promises to you, other than the

8      promises in the plea agreement, to get you to plead guilty

9      today?

10             THE DEFENDANT:  No, Your Honor.

11             THE COURT:  Now, as you sit where you are right

12     now, the government must still prove beyond a reasonable

13     doubt that you are guilty; and there's a presumption that

14     you are not guilty until that has been done.  Do you

15     understand that?

16             THE DEFENDANT:  Yes, I do, Your Honor.

17             THE COURT:  If you admit to your guilt, of course,

18     that takes care of that issue.  Do you understand that?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  There will be no trial in this case if

21     you plead guilty.  Do you understand?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  And, of course, all of those rights

24     that Ms. Dugi went over would be given to you during a

25     trial.  Do you understand?

1          THE DEFENDANT:  Yes, I do, Your Honor.

2          THE COURT:  There's a number of rights that she

3     went over.  I won't ask you to recount all of them, but

4     there are a couple of them I just want to emphasize.

5          Number one is the right that I just talked about,

6     the presumption of innocence.  We would instruct the jury,

7     after you had a chance to help pick that jury, that you are

8     presumed innocent until the government proved you guilty

9     beyond a reasonable doubt.  Do you understand?

10         THE DEFENDANT:  Yes, I do.

11         THE COURT:  We also would instruct them that you

12    have a right, all kinds of rights, but one of the rights is

13    to confront and cross-examine witnesses, either yourself or

14    through your attorney Mr. Rivers.  Do you understand that?

15         THE DEFENDANT:  Yes, I do.

16         THE COURT:  Now, Mr. Rivers is a good lawyer.

17    I've seen him here before.  The question for you, however,

18    is, Has he been a good lawyer for you?

19         THE DEFENDANT:  He's been a fantastic lawyer.

20    He's one of the best, Your Honor.

21         THE COURT:  That's great.  Good to hear that.  Has

22    he had an opportunity to talk with you as much as you wanted

23    to?

24         THE DEFENDANT:  Absolutely, Your Honor.  Always

25    there.

1          THE COURT:  Has he answered all of your questions?

2          THE DEFENDANT:  Yes, Your Honor, he has.

3          THE COURT:  And you are willing to take his advice

4    here today?

5          THE DEFENDANT:  Yes, sir, I would.  Yes, I would.

6          THE COURT:  Do you believe you are guilty of the

7    charge contained in Count 1 of the indictment?

8          THE DEFENDANT:  Yes, I do.

9          THE COURT:  Do you still wish to plead guilty to

10   that charge?

11         THE DEFENDANT:  Yes, I do.

12         THE COURT:  I'm going to ask you then, How do you

13   now plead?

14         THE DEFENDANT:  I plead guilty, Your Honor.

15         THE COURT:  I'm going to put this finding into the

16   record.  It is the case -- findings of the court in the case

17   of the United States versus Christopher James Rajkaran that

18   the defendant is fully competent and capable of entering an

19   informed plea and that his plea is a knowing and voluntary

20   plea supported by an independent basis in fact containing

21   each of the essential elements of the offense.  His

22   agreement is therefore -- his plea agreement is therefore

23   conditionally accepted, and he is now adjudged guilty of

24   that offense.

25         Now, before we go -- and I say "conditionally

1   accepted" because before I accept it, I want to have a

2   presentence investigation made.  That's why we have the

3   probation officer present during this hearing.

4              After -- after I leave, Mr. Rivers, if you'd like

5   to be present during any of the interrogation of your

6   client, make sure that that is made known to the probation

7   officer.

8              But the probation officer will be interviewing you

9   and will also be -- you've just been handed some papers by

10  someone on camera.  Is that something we should take notice

11  of?

12             THE DEFENDANT:  No.  That was just the -- the -- I

13  just have to sign these and return to them.  It's some

14  documents that the court is requiring, Your Honor.

15             THE COURT:  Okay.  Fine.  Thank you.

16             THE DEFENDANT:  Thank you.

17             THE COURT:  I just wanted to make sure that it

18  wasn't something we should ignore or not ignore.

19             THE DEFENDANT:  No.  Sorry about the interruption,

20  Your Honor.

21             THE COURT:  No problem.  I'm glad it didn't happen

22  on camera.

23             The point I was making is, of course, that you

24  should cooperate with the probation officer when they do

25  this investigation.

```
1              THE DEFENDANT:  Yes, Your Honor.

2              THE COURT:  When it is completed, it will be put

3     into written form and Mr. Rivers will get a copy of it.  He

4     will be going over it with you.  Make sure you read it

5     because I'm going to be relying on it in sentencing you.  Do

6     you understand?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  And if it's not correct, if there's

9     anything wrong with the report, you tell Mr. Rivers.  He

10    knows how to go about getting it corrected or filing

11    objections to it.  Do you understand?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  Okay.  With that, I'm going to order

14    that the plea agreement be filed.  Ms. Dugi.  Hello?  Are

15    you still listening, Ms. Dugi?

16             MS. DUGI:  I am, Your Honor.

17             THE COURT:  And I'm going to order the plea

18    agreement be filed.  Would you do that, please?

19             MS. DUGI:  Yes, Your Honor.

20             THE COURT:  All right.  Is there anything else

21    that should come before the court this morning?

22             MS. DUGI:  Not for the government.  Thank you,

23    Your Honor.

24             THE COURT:  Mr. Rivers?

25             MR. RIVERS:  Your Honor, there was one thing.  You
```

1    know, Mr. Rajkaran is in custody, and, you know, I'm going

2    to make another pitch to have him released pending

3    sentencing.  We've looked at it.  The plea agreement calls

4    for -- you know, in terms of prison sentences for these

5    kinds of cases, it's a relatively low sentence.  He has a

6    wife that is -- has a new child and financially destitute,

7    and he'd like to at least self-report and get out and try to

8    make a little bit of income to help her along.  And he

9    would -- he does have a home to go to.  So I would like to

10   move to have him released today.

11              THE COURT:  All right.  What's the government's

12   view on that motion?

13              MS. DUGI:  Your Honor, a couple of thoughts.  This

14   is now the fourth time, I believe, the defendant has sought

15   release.  He's been denied by two magistrate judges in the

16   Eastern District of New York, the magistrate judge in this

17   district.  And, if anything, after entering a guilty plea,

18   the burden is on the defendant and much greater.  He

19   presents no new information to the court regarding

20   detention.  Detention remains appropriate as it was

21   previously.  We would oppose that request.  Thank you.

22              MR. RIVERS:  And I would just note, Your Honor,

23   that the similarly situated codefendants were released.

24              THE COURT:  Well, the problem I have, Mr. Rivers,

25   is, of course, I have no information in front of me as far

44

1    as the recommendation of -- and, of course, he hasn't been

2    supervised, but from anybody in the probation department.

3    Normally we have the facts we have after an investigation's

4    been done.  If you wish, you can bring the motion again

5    before the magistrate judge now that he's pleaded guilty, if

6    you would.  I'm just not prepared today to grant your

7    motion.  And so I'm going to deny it conditionally.  You can

8    bring it again before the magistrate judge once there's been

9    a consideration of his plea and also the fact that we get

10   some response from the probation department as to whether

11   there's been changes sufficient to allow his release at this

12   point.

13             Anything else that should come before the court?

14             MS. DUGI:  No.  Thank you, Your Honor.

15             MR. RIVERS:  No, Your Honor.

16             THE COURT:  Ms. De La Riva, anything that you

17   have, probation officer?

18             PROBATION OFFICER:  No, Your Honor.  Thank you

19   very much.

20             THE COURT:  All right.  Thank you.

21             Court is going to stand in recess.  Thank you.

22             (Court adjourned at 11:30 a.m., 10-7-2021.)

23             I, Renee A. Rogge, certify that the foregoing is a
     correct transcript from the record of proceedings in the
24   above-entitled matter.
                        Certified by:  /s/Renee A. Rogge
25                                     Renee A. Rogge, RMR-CRR